UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WENDALL JERMAINE HALL,

     Plaintiff,

v.                                                  Case No. 3:18-cv-1324-J-39MCR

MS. PHILLIPS, et al.,

     Defendants.

_____

## ORDER

### I. Status

Plaintiff, Wendall Jermaine Hall, is proceeding on a pro se civil rights complaint under 42 U.S.C. § 1983 (Doc. 1; Compl.) against the following individuals: Nurse Phillips, Nurse Polk, and Officer J. Johnson. Before the Court are Defendant Johnson's Motion for Summary Judgment (Doc. 79; Johnson Motion) and Defendants Phillips and Polk's Motion for Summary Judgment (Doc. 80; Phillips Motion). Defendant Johnson provides hundreds of pages of exhibits (Docs. 79-1 through 79-23; Johnson Exs. 1-23).[1] Plaintiff has responded to Defendants' motions (Docs. 83, 86, 89). Separately, he filed

_____

[1] The Court will reference Defendant Johnson's exhibits by number (1 through 23) as opposed to the letter designations defense counsel assigns, because the final exhibit ("E") has nineteen parts.

exhibits (Docs. 84-1 through 84-14; Pl. Exs. A-N) and a supplemental affidavit (Doc. 90; Pl. Ex. O).

## II. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations

2

(including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

### III. Complaint Allegations

Plaintiff's claims arise out of conduct that occurred at the Reception and Medical Center (RMC) in 2018. Compl. at 2. Plaintiff alleges that, on October 31, 2018, he had a valid medical pass to receive catheters for his urinary and prostate issues, but Nurses Phillips and Polk refused to give him his medical supplies because an officer did not escort him to the medical unit. Id. at 13, 14,

3

16. Plaintiff alleges Defendant Officer Johnson cursed at him, threatened him, pushed him against a wall, and took him to an office where Johnson "repeatedly beat or punched [him] in the stomach causing [P]laintiff severe physical pain and to vommit [sic] blood." Id. at 15-16.

Plaintiff asserts Defendants' actions constitute deliberate indifference in violation of the Eighth Amendment, retaliation in violation of the First Amendment, and a denial of equal protection in violation of the Fourteenth Amendment. Id. at 19, 20, 21. He seeks compensatory and punitive damages from Defendants in their individual capacities.[2] Id. at 12, 22.

## IV. Analysis & Conclusions

### A. Defendant Johnson's Motion

Defendant Johnson argues Plaintiff failed to fully disclose his litigation history in his civil rights complaint form; the Court should revoke Plaintiff's in forma pauperis status because Plaintiff was not in imminent danger at the time he filed his complaint; Plaintiff failed to exhaust his administrative remedies; and Plaintiff suffered no more than de minimis injuries. See Johnson Motion at 5, 10, 16, 23.

---

[2] Plaintiff also seeks injunctive relief in his complaint. See Compl. at 22. Plaintiff has been released from the FDOC's custody, and he concedes his request for injunctive relief is now moot. See Johnson Ex. 3 at 27-28.

Exhaustion is a matter in abatement and should be raised on a motion to dismiss. See Bryant v. Rich, 530 F.3d 1368, 1374-75 (11th Cir. 2008). As such, when a defendant raises exhaustion in a motion for summary judgment, the court should treat the defense as if raised in a motion to dismiss. Id. See also Maldonado v. Unnamed Defendant, 648 F. App'x 939, 951 (11th Cir. 2016) ("We treat an exhaustion defense raised in a motion for summary judgment as an unenumerated Rule 12(b) motion to dismiss."). Accordingly, the Court treats Defendant Johnson's exhaustion defense as if raised in a motion to dismiss.

The Prison Litigation Reform Act (PLRA) provides, "No action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." Bryant, 530 F.3d at 1374. See also Jones v. Bock, 549 U.S. 199, 211 (2007). While "the PLRA exhaustion requirement is not jurisdictional[,]" Woodford v. Ngo, 548 U.S. 81, 101 (2006), "exhaustion is mandatory . . . and unexhausted claims cannot be brought," Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citing Jones, 549 U.S. at 211). Nevertheless, prisoners are not required to "specially plead or demonstrate exhaustion in their complaints." See Jones, 549 U.S. at 216.

Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in applicable administrative rules and policies. <u>Woodford</u>, 548 U.S. at 93. As such, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" <u>Id.</u> Generally, to properly exhaust administrative remedies, a Florida prisoner must complete a three-step process as fully set forth in the Florida Administrative Code (FAC). <u>See</u> Fla. Admin. Code rr. 33-103.005 through 33-103.007. However, an inmate may bypass the first two steps "and proceed directly to the Office of the Secretary" when grieving an issue of an "emergency nature." <u>See</u> Fla. Admin. Code r. 33-103.005(1).

When an inmate submits an emergency grievance, if the Office of the Secretary finds an emergency does not in fact exist, the prisoner must be notified of such "within three working days of receipt . . . ." Fla. Admin. Code r. 33-103.007(3)(b)4. In such an instance, an inmate cannot be said to have properly exhausted his administrative remedies unless he thereafter submits a timely, proper grievance and satisfies the grievance procedure. <u>See</u> <u>Pavao</u>, 679 F. App'x at 825.

An inmate must properly exhaust his administrative remedies "<u>before</u> pursuing a § 1983 lawsuit." <u>Smith v. Terry</u>, 491 F. App'x 81, 83 (11th Cir. 2012) (emphasis in original). This is because the inmate must afford the agency a "full and fair opportunity" to address his issues on the merits before he seeks

judicial intervention. <u>Woodford</u>, 548 U.S. at 90. <u>See also</u> <u>Smith</u>, 491 F. App'x at 83, 84 (holding the inmate did not properly exhaust his administrative remedies because he "brought" his lawsuit before receiving a response to his grievance appeal and before the response time expired).

Courts confronted with an exhaustion defense employ a two-step process:

> First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust.

<u>Whatley v. Warden, Ware State Prison</u>, 802 F.3d 1205, 1209 (11th Cir. 2015) (internal citations omitted) (citing <u>Turner v. Burnside</u>, 541 F.3d 1077, 1082-83 (11th Cir. 2008)).

Under the first step of the <u>Turner</u> analysis, the Court must accept as true the allegations Plaintiff makes in his responses (Docs. 86, 89).[3] Plaintiff does not dispute the relevant facts. Rather, Plaintiff argues Defendant Johnson's exhaustion defense is moot because the Court previously denied Defendants Phillips and Polk's motion to dismiss in which they raised an exhaustion defense. <u>See</u> Doc. 86 at 6; Doc. 89 at 23. He also argues that the

---

[3] For some reason, Plaintiff responded to Defendant Johnson's motion twice.

Office of the Secretary did not return his grievance within three working days of having received it, which permitted him to proceed with judicial remedies. See Doc. 86 at 6; Doc. 89 at 24.

In its Order on Defendants Phillips and Polk's motion to dismiss, the Court found as follows:

> Defendants provide no records to substantiate their assertion that Plaintiff did not exhaust his administrative remedies. Even more, Plaintiff offers evidence showing Defendants' contention that he filed no grievances is false.

See Order (Doc. 57) at 7 (footnote omitted). As Plaintiff asserts in his response to Defendant Johnson's motion, the Court also found the Office of the Secretary did not timely notify Plaintiff his grievance was not accepted as an emergency because it did so more than three working days after receiving the grievance. Id. at 9.

The Court's ruling on Defendants Phillips and Polk's motion to dismiss does not moot the exhaustion issue as to Defendant Johnson, who did not join the motion to dismiss. Instead, Defendant Johnson answered the complaint (Doc. 27; Johnson Ans.) and raised failure-to-exhaust as an affirmative defense. See Johnson Ans. at 5. Additionally, in their motion to dismiss, Defendants Phillips and Polk did not advance the argument Defendant Johnson does in his motion presently before the Court—that Plaintiff did not await the response time under the relevant provision of the FAC before filing

8

his complaint. Because this is a legal, not a factual dispute, the Court may decide the issue at the first step of the <u>Turner</u> analysis.

According to Defendant Johnson, Plaintiff filed his complaint before the time expired for the Office of the Secretary to respond. Under the FAC, emergency grievances "[s]hall be responded to within 15 calendar days of receipt." Fla. Admin. Code r. 33-103.011(3)(c). When an inmate does not receive a timely response to a grievance, the inmate is permitted to proceed to the next step of the grievance process:

> [E]xpiration of a time limit at any step in the process shall entitle the complainant to proceed to the next step of the grievance process. . . . If the inmate does not agree to an extension of time at the central office level of review, he shall be entitled to proceed with judicial remedies.

Fla. Admin. Code r. 33-103.011(4) (emphasis added).

Plaintiff submitted his emergency grievance on November 1 or 2, 2018 (Doc. 46-4; Pl. Griev.).[4] According to the agency stamp, the Office of the Secretary did not receive the emergency grievance for almost two weeks, on November 13, 2018. <u>See</u> Pl. Griev. at 1. From that date, the Office of the Secretary had three working days to notify Plaintiff his grievance was not accepted as an emergency or fifteen calendar days to provide a formal response. The Office of the Secretary responded to Plaintiff's grievance on November 20,

---

[4] Both dates appear at the bottom of the grievance.

2018,[5] advising him his grievance was being returned "without action" because it was not deemed an emergency and because Plaintiff had grieved more than one issue. Id. at 2. Even though the responding official informed Plaintiff his grievance was being returned "without action" more than three working days after it was received, the Office of the Secretary investigated Plaintiff's complaints. An official responded as follows: "the institution was contacted and advised Officer Johnson said that he is not reprising against Inmate Hall . . . for utilizing the grievance procedure." Id.

By investigating Plaintiff's complaint, the Office of the Secretary essentially declined to enforce its own procedural rule and opted to consider the grievance on the merits. Cf. Whatley, 802 F.3d at 1215 (adopting the reasoning of other circuit courts and holding that, barring other deficiencies, an inmate exhausts his administrative remedies "when prison officials decide a procedurally flawed grievance on the merits"). As such, Plaintiff received a "formal response" to his grievance.

Because the Office of the Secretary investigated Plaintiff's complaint, it had up to fifteen calendar days to respond, which it did. See Pl. Griev. at 2. Plaintiff, however, did not wait the fifteen-day response time before filing his civil rights complaint. Plaintiff filed his complaint on November 8, 2018, before

---

[5] The Office mailed the grievance to Plaintiff the following day, on November 21, 2018. See Pl. Griev. at 2.

the Office of the Secretary even received the grievance. Plaintiff contends that, under the prison mailbox rule, the Office of the Secretary "received" his grievance when he filed it, on November 1 or 2, 2018. See Doc. 89 at 24. This contention is flawed. The mailbox rule operates to ensure an inmate, who has no control over the mail, can meet his deadline even if his filing reaches the intended recipient after the deadline expires. See Houser v. United States, 808 F. App'x 969, 971 (11th Cir. 2020) (noting the mailbox rule is necessary because inmates "lose control over their filing[s] when they deliver [them] to prison authorities").

Under the FAC, emergency grievances directly to the Office of the Secretary "[m]ust be received within 15 calendar days from the date on which the incident or action which is the subject of the grievance occurred." Fla. Admin. Code r. 33-103.011(1)(d). In determining whether an inmate's direct grievance to the Office of the Secretary was timely filed, a staff person must compare the "receipt date on the [grievance] form to the date of the incident or situation giving rise to the complaint." See Fla. Admin. Code r. 33-103.007(6)(b)2. Plaintiff submitted his grievance within one or two days of the incident giving rise to his complaint, and his grievance was timely received, so the mailbox rule has no application in this scenario. Even more, the relevant deadline here is the one that applies to the Office of the Secretary in responding to Plaintiff's grievance, not Plaintiff's deadline to submit the grievance in the

first instance. The FAC provides that the agency response is due within "15 calendar days of <u>receipt</u>," not filing. <u>See</u> Fla. Admin. Code r. 33-103.011(3)(d).

However, even assuming for argument's sake that the agency's response time was to be calculated from the day Plaintiff filed his grievance, he still did not wait long enough before bringing this action. In other words, on November 8, 2018, when Plaintiff filed his complaint, fifteen calendar days had not elapsed from November 1 or 2, 2018, when he filed his emergency grievance.[6] On November 8, 2018, Plaintiff was not authorized under the relevant provision of the FAC to pursue judicial remedies because he had not yet received a response to his grievance, nor had the response time expired. <u>See</u> Fla. Admin. Code r. 33-103.011(4).

For the above reasons, accepting Plaintiff's allegations as true, he did not properly exhaust his administrative remedies before bringing this action against Defendant Johnson. Thus, Defendant Johnson's construed motion to dismiss under Rule 12 is due to be granted for Plaintiff's failure to exhaust, and, as a result, his motion for summary judgment is due to be denied as moot.

---

[6] It appears Plaintiff was poised to file this action even earlier. With his complaint, Plaintiff provides the affidavit of another inmate. That affidavit, which Plaintiff wrote, and the inmate signed, was dated November 3, 2018. <u>See</u> Compl. at 25.

## B. Defendants Phillips & Polk's Motion

Nurses Phillips and Polk do not re-assert an exhaustion defense on summary judgment. Rather, they assert Plaintiff has not demonstrated a genuine issue of material fact as to his claims for deliberate indifference under the Eighth Amendment, retaliation under the First Amendment, and equal protection under the Fourteenth Amendment. See Phillips Motion at 1-2, 7, 14, 16. Alternatively, Defendants assert Plaintiff may not recover compensatory or punitive damages because he alleges having suffered only minimal injuries. Id. at 17.

### i. Deliberate Indifference

Nurses Phillips and Polk argue Plaintiff's allegations supporting his deliberate indifference claim are conclusory and amount to, at most, a disagreement with medical care. Id. at 11. They contend, "[T]he allegations against defendants and the record evidence before this Court are insufficient as a matter of law." Id. The problem with this argument is that Nurses Phillips and Polk point to no record evidence to support it.

When the nonmovant bears the burden of proof at trial—as Plaintiff does here—the movant does not have to offer affidavits or evidence to negate the plaintiff's claim. But, to discharge his burden on summary judgment, the movant must "show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case." United States

13

v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala., 941 F.2d 1428, 1438 (11th Cir. 1991) (quoting with alteration Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The movant must do more than state, in conclusory terms, that the nonmovant will be unable to meet his burden at trial. Clark, 929 F.2d at 608. See also Celotex, 477 U.S. at 328 ("It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case." (White, J., concurring)).

Because Nurses Phillips and Polk point to no record evidence to show the absence of a genuine issue of material fact on Plaintiff's deliberate indifference claim, their motion is due to be denied as to that claim. Additionally, the record evidence tends to substantiate some of Plaintiff's allegations. For instance, Plaintiff had a health pass renewed on September 20, 2018, valid for one year, to receive medical supplies. The health pass did not reference catheters directly, but a nurse's entry in Plaintiff's medical file specifies that Plaintiff was "to self cath in infirmary BID [two times a day]," and that those supplies would be "provided in infirmary." See Johnson Ex. 17 at 35.

In his own affidavit, Plaintiff avers Nurses Phillips and Polk refused to provide him prescribed catheters from October 31, 2018, through November 26, 2018. See Pl. Ex. A at 1. According to Plaintiff, Nurses Phillips and Polk told him they would not give him the supplies he needed unless he was escorted

14

by an officer because of his "past disciplinary reports for masturbation and because [Plaintiff] wrote grievances on them or the medical supply room previously." Id. at 3. Plaintiff avers Defendants' actions caused him to suffer among other things "severe physical pain, severe bloating, worsening inability to urinate, worsening urethra stricture and urinary conditions, [and] inability or difficulty walking." Id. at 6. Plaintiff says he did not receive catheters until Nurse Robinson gave him some in late November. Id. at 10-11. An entry in Plaintiff's medical chart indicates he received sixteen "straight caths" on November 28, 2018. See Johnson Ex. 16 at 54.

Plaintiff also provides copies of sick-call requests he purportedly submitted on November 3, 6, and 11, 2018, complaining of an inability to urinate. See Pl. Exs. E, F, L. In the November 11, 2018 request, Plaintiff wrote he was "not receiving catheters." See Pl. Ex. F. On November 20, 2018, Plaintiff submitted a grievance to the Warden, complaining that "sick call nurses [would] not allow [him] to attend sick call for [his] ongoing complaints of . . . severe pain urinating . . . [and] inability to urinate condition." See Pl. Ex. J. Plaintiff complained of other issues as well. An official responded to his grievance as follows: "Review of records does not reflect any sick call entries. However, you were evaluated by a physician for the complaints specified in

your grievance on November 7, 2018."[7] Id. at 2.

It does not appear Plaintiff actually submitted the sick-call requests he provides. Not only does the response Plaintiff received to his November 20, 2018 grievance indicate he did not submit them, unlike similar copies of sick-call requests Defendant Johnson provides with his motion, the sick-call requests Plaintiff provides do not have a prison stamp acknowledging their receipt. See Pl. Exs. E, F, L. Cf., e.g., Johnson Ex. 18 at 43, 47-49. Regardless, whether Plaintiff requested or received catheters after October 31, 2018, and before November 28, 2018, and whether he submitted sick-call requests are questions subject to "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences," which are jury functions. See Anderson, 477 U.S. at 255. Additionally, in a supplemental affidavit, Plaintiff avers he was placed in confinement on November 7, 2018, and he requested catheter supplies every day until November 27, 2018, because Nurses Phillips and Polk refused to provide the confinement nurses with the supplies he needed. See Pl. Ex. O ¶¶ 6, 8.

Defendants Phillips and Polk point to no evidence directly contradicting Plaintiff's assertions. For instance, there is no evidence showing whether a

---

[7] According to the declaration of Kellie Caswell, RN, BSN, Plaintiff was seen on November 7, 2018, for unrelated medical issues. See Johnson Ex. 4 ¶ 9.

prison official dispensed medical supplies to Plaintiff during the relevant time. Notably, Nurse Caswell avers she reviewed Plaintiff's medical records and simply concludes, "There is no indication that [Plaintiff] was ever denied catheters while housed at RMC and his medical records show that, at the very least, he was receiving catheters through the alleged incident of October 31, 2018, and received 16 catheters on November 28, 2018." See Johnson Ex. 4 ¶ 9. A reasonable inference to be drawn from this statement is that Plaintiff may not have received catheters between October 31, 2018, and November 28, 2018. Such an inference is even more plausible when Nurse Caswell's affidavit is considered in conjunction with other evidence.  For instance, there are records from Apalachee Correctional Institution East documenting that Plaintiff visited the infirmary for his catheter supplies in February and March 2018. See Johnson Ex. 19 at 26-29. No similar records from RMC were filed to show whether a prison official dispensed medical supplies to Plaintiff on the dates at issue. However, it appears that had Plaintiff received medical supplies, such an event would have been recorded somewhere.

Plaintiff also offers the affidavit of a fellow inmate, Elder Williams, who avers he witnessed Nurse Phillips refuse to give Plaintiff catheters on October 31, 2018. See Pl. Ex. B at 2. Inmate Williams does not mention Nurse Polk.

Upon review, there is evidence showing Plaintiff had a valid medical pass to receive catheters twice daily during the relevant times. And, accepting

Plaintiff's allegations as true, Nurses Phillips and Polk refused to give Plaintiff his catheters between October 31, 2018, and November 27, 2018, for no medical reason. Nurses Phillips and Polk point to no evidence contradicting Plaintiff's allegations, and their argument that Plaintiff alleges a mere disagreement with medical treatment is not convincing.

"The knowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference." Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir. 1985). Additionally, intentionally interfering with a prescribed treatment or delaying necessary medical attention can violate the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994), overruled in part on other grounds by Hope v. Pelzer, 536 U.S. 730, 739 n. 9 (2002). See also Roy v. Corr. Med. Servs., Inc., 522 F. App'x 597, 600-01 (11th Cir. 2013) (holding the district court improperly granted summary judgment on the plaintiff's deliberate indifference claim because the "unrebutted evidence" showed that a doctor ordered "[the plaintiff's] catheter be changed every four weeks" but it had not been changed for fifteen). Taking what Plaintiff says as true, Nurses Phillips and Polk interfered with a valid medical pass, which caused a delay in necessary medical treatment for a serious medical need. Such conduct, if true, constitutes an Eighth Amendment violation.

18

### ii. Retaliation

Nurses Phillips and Polk assert Plaintiff's retaliation claim fails as a matter of law because Plaintiff offers no evidence showing he engaged in constitutionally protected activity and, even if he had, there is no evidence Defendants' alleged conduct was motivated by Plaintiff exercising his First Amendment right. See Phillips Motion at 13-14. In his complaint, Plaintiff alleges Nurses Phillips and Polk refused to give him catheters in retaliation for his grievance-writing and disciplinary history. See Compl. at 14, 17, 20. Plaintiff does not support these conclusory statements with factual allegations. For instance, he does not describe any instances in which he wrote grievances against either Nurse Phillips or Nurse Polk, nor does he allege Nurses Phillips and Polk told him they were denying him catheters because he filed grievances against them. Plaintiff also does not allege Nurses Phillips and Polk were aware of his disciplinary history. Even if they were, he fails to allege facts showing a causal connection between any such knowledge and Defendants' alleged conduct.

In his response to Defendants Phillips and Polk's motion, Plaintiff does not directly rebut Defendants' argument that his retaliation claim fails as a matter of law. See Pl. Phillips Resp. at 4, 8, 13, 15. In his affidavit, as in his complaint, Plaintiff avers only in a conclusory manner that Defendants Phillips and Polk retaliated against him for writing grievances and because of

his disciplinary history. <u>See</u> Pl. Ex. A at 3-4. He provides no factual support for his conclusory assertion.

Plaintiff offers as an exhibit only one grievance that pre-dates the incidents giving rise to his complaint. On May 20, 2018, Plaintiff submitted an informal grievance to the medical director complaining that two nurses, Winchester and Polk, harassed him and discriminated against him when he went to the medical warehouse for supplies. <u>See</u> Pl. Ex. L. Primarily, he complained about Nurse Winchester, who Plaintiff said cursed at him. <u>Id.</u> Plaintiff did not mention Nurse Phillips at all. His grievance was denied on May 29, 2018. <u>Id.</u>

An inmate who suffers adverse consequences as a result of submitting grievances about his conditions of confinement demonstrates a First Amendment violation. <u>Farrow v. West</u>, 320 F.3d 1235, 1248 (11th Cir. 2003). To state an actionable retaliation claim, a plaintiff must allege:

> (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action . . . and the protected speech [the grievance].

<u>O'Bryant v. Finch</u>, 637 F.3d 1207, 1212 (11th Cir. 2011) (first and third alterations in original). To establish the third element, a plaintiff must "do more than make 'general attacks' on a defendant's motivations and must

20

articulate 'affirmative evidence' of retaliation to prove the requisite motive."

Jackson v. Assistant Warden, No. 16-16107-E, 2018 WL 7858414, at *2 (11th

Cir. Dec. 6, 2018) (quoting Crawford-El v. Britton, 523 U.S. 574, 600 (1998)).

In other words, "the plaintiff must show that the defendant was 'subjectively

motivated to discipline' the plaintiff for exercising his First Amendment

rights." Stallworth v. Tyson, 578 F. App'x 948, 951 (11th Cir. 2014) (quoting

Smith v. Mosley, 532 F.3d 1270, 1277 (11th Cir.2008)). A temporal relationship

between the protected activity and adverse action can constitute

circumstantial evidence of causation, but, in the absence of other evidence,

"temporal proximity must be very close." Higdon v. Jackson, 393 F.3d 1211,

1220 (11th Cir. 2004) ("If there is a substantial delay between the protected

expression and the adverse action[,] in the absence of other evidence tending

to show causation, the complaint of retaliation fails as a matter of law.").

Plaintiff's grievance constitutes protected speech. However, Plaintiff

offers no evidence permitting the reasonable inference that the alleged adverse

action was motivated by a single grievance he wrote almost six months before.

The lapse of time alone cuts against a causal connection. See, e.g., Herron-

Williams v. Alabama State Univ., 805 F. App'x 622, 633 (11th Cir. 2020)

(holding no reasonable jury could conclude the plaintiff's September pay cut

was motivated by her July EEOC complaint in the absence of evidence to

connect the two events); Thomas v. CVS/Pharmacy, 336 F. App'x 913, 915-16

(11th Cir. 2009) ("[T]hree and a half months is too long a delay to support a causation finding absent other evidence of retaliatory intent."). As to Nurse Phillips, who Plaintiff does not even mention in the grievance, the connection is even more attenuated.

Additionally, Plaintiff offers absolutely no evidence showing he had a history of receiving disciplinary reports and that, if he had, Nurses Phillips and Polk were aware of his history and treated him badly because of it. Absent evidence of a causal connection, Plaintiff's retaliation claim fails as a matter of law. Accordingly, Nurses Phillips and Polk are entitled to summary judgment in their favor on Plaintiff's retaliation claim.

### iii. Equal Protection

Nurses Phillips and Polk argue Plaintiff's equal protection claims fails as a matter of law as well. See Phillips Motion at 16. They contend Plaintiff produces no evidence of disparate treatment or discriminatory intent. Id. at 15. Upon review of the complaint, it appears Plaintiff brings an equal protection claim because, according to him, "no other inmate ha[d] been required to be escorted by an officer to supply room to receive supplies." See Compl. at 17. See also Pl. Ex. A at 10.

The Equal Protection Clause ensures that "all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). "To establish an equal protection claim, a prisoner must

demonstrate that (1) 'he is similarly situated with other prisoners who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001). Bare allegations of unequal treatment do not suffice. See GJR Invs., Inc. v. Cnty. of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998), overruled on other grounds by Ashcroft v. Iqbal, 556 U.S. 662 (2009).

Plaintiff's claim fails as a matter of law because he points to no similarly situated inmates—other than in abstract terms—who were treated differently than him and, more importantly, he does not allege he was discriminated against based on his membership in a protected class. Thus, Nurses Phillips and Polk are entitled to summary judgment on this claim.

### iv. Injuries

Nurses Phillips and Polk contend Plaintiff "has not produced sufficient evidence to support his allegations that he suffered physical injuries as a result of [their] acts or omissions." See Phillips Motion at 17. The PLRA provides, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Eleventh Circuit has explained a "physical injury" is one that is not simply de minimis, though it "need not be significant." Dixon v. Toole, 225 F. App'x 797,

799 (11th Cir. 2007) (per curiam) (quoting <u>Harris v. Garner</u>, 190 F.3d 1279, 1286 (11th Cir. 1999)). The Eleventh Circuit recently clarified that to constitute a "physical injury" under the PLRA, a prisoner's condition need not be so severe as to require "professional medical attention." <u>Thompson v. Smith</u>, 805 F. App'x 893, 904 (11th Cir. 2020).

Plaintiff alleges Nurses Phillips and Polk denied him catheters for almost one month, causing "severe physical pain, severe bloating, worsening inability to urinate, worsening urethra stricture and urinary conditions, [and] inability or difficulty walking." <u>See</u> Pl. Ex. A at 6. Additionally, according to Nurse Caswell, the following complications can occur if a patient is unable to empty his bladder: "increased bladder volume, urinary tract infection, or bladder rupture." <u>See</u> Johnson Ex. 4 ¶ 10. While it does not appear Plaintiff suffered the more serious complications Nurse Caswell describes, Plaintiff alleges having had increased bladder volume, which caused him pain and other issues. On this record, the Court is not inclined to conclude as a matter of law that Plaintiff's injuries are <u>de</u> <u>minimis</u> under the PLRA.

Accordingly, it is now

**ORDERED:**

1. Defendant Johnson's construed motion to dismiss (Doc. 79) is **GRANTED** to the extent Plaintiff did not exhaust his administrative remedies before bringing this action against Defendant Johnson.

2.     Plaintiff's claims against Defendant Johnson are **DISMISSED without prejudice** under Federal Rule of Civil Procedure 12(b) for Plaintiff's failure to exhaust his administrative remedies.[8]

3.     Defendant Johnson's Motion for Summary Judgment (Doc. 79) is **DENIED as moot**.

4.     Defendants Phillips and Polk's Motion for Summary Judgment (Doc. 80) is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** to the extent Plaintiff's First and Fourteenth Amendments claims fails as a matter of law and are dismissed. The motion is **DENIED** to the extent Plaintiff's Eighth Amendment claim for damages against Defendants Phillips and Polk in their individual capacities survives.

5.     This case is in a posture to proceed to settlement conference and, if settlement negotiations fail, to trial. Accordingly, this case is **REFERRED** to the Jacksonville Division Civil Pro Bono Appointment Program so the designated deputy clerk of the Court may seek counsel to represent Plaintiff. The Court encourages the parties to attempt to settle the case privately in the meantime. If settlement negotiations are successful, the parties shall immediately notify the Court.

---

[8] The dismissal is without prejudice because Plaintiff can cure the exhaustion problem by refiling his claims against Defendant Johnson. If Plaintiff chooses to commence a new civil rights action against Defendant Johnson, he should consider the running of the statute of limitations.

**DONE AND ORDERED** at Jacksonville, Florida, this 28th day of January 2021.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Wendall Jermaine Hall
Counsel of Record